RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0202p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————



LOUIS CHANDLER,

       *Petitioner-Appellant*,

*v.*

MIKE BROWN, Warden,

       *Respondent-Appellee.*

No. 23-1270

On Petition for Rehearing En Banc

United States District Court for the Western District of Michigan at Marquette.
No. 2:19-cv-00263—Paul Lewis Maloney, District Judge.

Decided and Filed:  July 31, 2025

Before:  WHITE, STRANCH, and DAVIS, Circuit Judges.

———————

### COUNSEL

**ON PETITION FOR REHEARING EN BANC and MEMORANDUM OF LAW SUPPLEMENTING THE PETITION FOR REHEARING EN BANC:**  Ann M. Sherman, Jared D. Schultz, OFFICE OF THE MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellee.  **ON RESPONSE:**  Matthew A. Monahan, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Detroit, Michigan, Jessica Zimbelman, STATE APPELLATE DEFENDER OFFICE, Detroit, Michigan, for Appellant.

The court delivered an ORDER denying the petition for rehearing en banc.  THAPAR and MURPHY, JJ., (pp. 3–28), delivered a separate opinion dissenting from the denial of the petition for rehearing en banc, in which GRIFFIN and READLER, JJ., concurred.

_____

## ORDER

_____

The court received a petition for rehearing en banc.  The original panel has reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision.

The petition was then circulated to the full court.[*]  Less than a majority of the judges voted in favor of rehearing en banc.

Therefore, the petition is denied.

_____

[*]Hon. Whitney D. Hermandorfer did not participate in this decision.

————————————

## DISSENT

————————————

THAPAR and MURPHY, Circuit Judges, dissenting.  Louis Chandler sexually abused his eight-year-old foster daughter.  At trial, she told the jury in graphic detail about how Chandler molested her.  She wasn't the first one Chandler had sexually abused.  Three other victims testified about the abuse they suffered at his hands.  Even Chandler's wife corroborated his foster daughter's claims of sexual abuse by Chandler.

So how did Chandler convince a panel of this court to grant him habeas relief?  He tells us that the state trial court wrongly prohibited a different foster couple from testifying that the victim had previously made false allegations against them soon after they proposed to adopt her.  According to Chandler, their testimony could have shown that the victim had a motive to falsely accuse Chandler too, so that she could return to her birth parents.  Never mind that, by the time of the victim's testimony at trial, she had been adopted by another family and living with them for almost five years without accusing them of misconduct.  Never mind that the victim did not make allegations of sexual abuse against the prior foster parents; she alleged that they did things like hit her with a wooden spoon, pull her by the ponytail, and give her ill-fitting clothes.  And never mind that at least one of the victim's accusations against the prior foster parents (that they put soap in her mouth) turned out to be true.  (The parents are now on a child abuse registry.)  Chandler still claims that his foster daughter's alleged prior accusations against this other couple about these other events were central to his defense to the charged sexual abuse.

A Michigan appellate court held that the trial court committed various state-law errors in the process of excluding this evidence.  Ultimately, though, that court held that these state-law errors did not rise to a federal constitutional violation.  And it found the errors harmless after assuming (without deciding) that some of Chandler's key evidence might have been admissible.

This federal habeas case thus asks: If a state appellate court concludes that a trial court's exclusion of evidence misapplied an otherwise valid rule of evidence or procedure, when does that *state-law* violation infringe the *federal* Constitution?  Always?  Never?  Sometimes?  If so,

when?  The Supreme Court has yet to confront this question, let alone clearly establish the ground rules that should govern it.  *Cf. Nevada v. Jackson*, 569 U.S. 505, 510 (2013) (per curiam).  And even if the Court eventually extends its "balancing of interests" approach to this new context, the Michigan appellate court did not unreasonably apply that approach.  *Id.*  Indeed, it's doubtful that the other foster couple's testimony would have been admissible even under a proper interpretation of Michigan law.  And the state court could reasonably find that Chandler did not have a "significant interest" in presenting this evidence anyway.  *United States v. Scheffer*, 523 U.S. 303, 316–17 (1998).  Unlike the excluded evidence in the Supreme Court cases that found a constitutional violation, the excluded evidence here did not concern "'facts' about the alleged crime at hand."  *Id.* at 317 & n.13.  So we are hard-pressed to see how the rejection of Chandler's claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  This should foreclose Chandler's claim under the Antiterrorism and Effective Death Penalty Act (AEDPA).

The panel's contrary reasoning violates AEDPA in several ways.  It improperly invokes evidence that the state court found forfeited or that was not in the state court record.  And it fails to provide the great deference owed to state courts when a petitioner relies on general constitutional principles.  The panel's decision also undercuts AEDPA's federalism and comity goals.  For example, Chandler's trial required four victims to testify about his abuse.  Now these victims must relive their trauma by testifying again.  Our full court should have prevented this result because the panel committed the types of errors that the Supreme Court has seen fit to summarily reverse.  *See Cassano v. Shoop*, 10 F.4th 695, 696–97 (6th Cir. 2021) (Griffin, J., dissenting from denial of rehearing en banc) (collecting 22 cases, including 12 summary reversals, in which the Court reversed the Sixth Circuit "for not applying the deference to state-court decisions mandated by AEDPA").

## I.

A Michigan jury convicted Chandler of criminal sexual misconduct, so he no longer receives any presumption of innocence in this habeas proceeding.  *See Herrera v. Collins*, 506

U.S. 390, 399–400 (1993). Unlike the panel, we describe the facts in the light most favorable to the jury's guilty verdict—not in the light most favorable to Chandler.

Chandler and his wife fostered an eight-year-old girl, A.H., for a few months. (Although the panel opinion refers to the victim as "A.C.," only Chandler uses these initials for her. We thus use A.H.) Foster parents are supposed to provide a stable home. But Chandler did not. In the few months he had custody of A.H., he sexually assaulted her twice.

The day after one such incident, A.H. reported the sexual abuse to Chandler's wife, who then reported Chandler to the authorities. At the time, Michigan prosecutors decided to let the abuse go.

It took four years—and Chandler molesting another child—for anything to happen. Chandler's 8-year-old step-granddaughter later reported that Chandler had inappropriately touched her. At this time, Chandler's family also came forward with the names of two other victims of Chandler's sexual abuse, as well as child pornography that they found on the family computer. Michigan indicted Chandler with four counts of first-degree criminal sexual conduct for his abuse of A.H. By then, A.H. had been adopted by the family with whom she had been living for almost five years.

During discovery, Chandler received a report from Child Protective Services ("CPS"). His attorney said the document revealed A.H.'s history of "false allegations." (The record does not contain this report. And the Michigan Court of Appeals held that Chandler abandoned any arguments based on it. *People v. Chandler*, No. 329605, 2017 WL 6502801, at *4 n.2 (Mich. Ct. App. Dec. 19, 2017) (per curiam).) After receiving the report, Chandler asked to hire an expert on child sex-abuse allegations. The court granted Chandler's request.

Chandler's lawyer then moved to compel additional discovery and to continue the trial so he could have more time to investigate. The government, for its part, pointed to the CPS report Chandler had received over a month earlier, and stated that it didn't have any other relevant records. The trial court denied most of Chandler's requests.

The day trial was set to start, Chandler's lawyer renewed his request for a continuance. Chandler's lawyer stated that his expert needed more time to review the case, although the lawyer hadn't given the expert "any of the information" about A.H.'s past allegations. R. 9-3, Pg. ID 254–56. His lawyer also asked for more time to conduct discovery, including about A.H.'s past allegations. The government reiterated that it had "turned over everything that [it] had and intended to use" almost two months before. *Id.* at Pg. ID 257.

The court denied Chandler's motion. Chandler's lawyer also failed to disclose the expert's name to the government. So the trial court found that Michigan's procedural rules barred the expert from testifying. *See* Mich. Ct. R. 6.201(A)(1).

The trial court separately barred Chandler from calling witnesses to testify about A.H.'s prior allegations on the grounds that this testimony was improper "extrinsic evidence." R. 9-3, Pg. ID 258; *see* Mich. R. Evid. 608(b). The court again denied his lawyer's motion for a continuance. On the second day of trial, the court also prohibited Chandler from calling those witnesses because he hadn't timely disclosed them.

Once trial began, the government put A.H. on the stand. She testified about at least two times that Chandler inappropriately touched her. During cross-examination, Chandler's lawyer asked A.H. about inconsistencies with her past statements. He also asked her about previous allegations against another foster couple. She admitted it was "possible" that she had made up an allegation that the family's dog attacked her. R. 9-4, Pg. ID 321. But she insisted that her other allegations of physical abuse against that couple were true. Counsel also asked about other past allegations, which she couldn't remember.

The government presented supporting testimony from three other female victims, including Chandler's step-granddaughter. They all testified that Chandler had inappropriately touched them when they were between five and ten years old. (The abuse of one victim occurred when both Chandler and the victim were children.)

Chandler's wife also testified. She corroborated aspects of A.H.'s account, including the parts of Chandler's inappropriate behavior that she saw firsthand. And she reported that she found pornographic images of young girls on the family computer in a folder entitled "Lou's

notes." R. 9-5, Pg. ID 378–79. Finally, a computer analyst testified about "stories relating to child sexual abuse" that he discovered on Chandler's computer. *Id.* at Pg. ID 363.

The jury convicted Chandler.

On appeal, a Michigan appellate court found that the trial court abused its discretion by denying Chandler's requests for continuances, by excluding his expert witness, and by employing the wrong evidentiary framework when considering the admissibility of A.H.'s alleged prior false accusations against her previous foster family, the Hamblins. *Chandler*, 2017 WL 6502801, at *3–4. But the court found that none of these errors prejudiced Chandler. *Id.* at *4. And it rejected Chandler's attempt to transform these state-law issues into a federal constitutional claim about his "right to present a defense." *Id.* at *4 n.3.

Chandler sought federal habeas relief. The district court denied his petition. But a panel of our court reversed, finding that the Michigan appellate court unreasonably applied Supreme Court precedent. *See Chandler v. Brown*, 126 F.4th 1178, 1194 (6th Cir. 2025). Our en banc court granted review but then returned the case to the panel for the entry of an amended opinion. *Chandler v. Brown*, 136 F.4th 689, 690 (6th Cir. 2025) (order) (en banc); *Chandler v. Brown*, 137 F.4th 525 (6th Cir. 2025) (per curiam) (amended panel opinion).

## II.

The panel held that the Michigan trial court's exclusion of evidence violated Chandler's constitutional right to put on a complete defense and that the Michigan Court of Appeals violated AEDPA in rejecting Chandler's constitutional claim. The panel's reasoning commits basic habeas errors. To start, the panel relies on a large amount of evidence (mostly hearsay) that the Michigan Court of Appeals found abandoned. The panel ignores the state court's forfeiture conclusion—which qualifies as an adequate and independent state-law ground to deny relief. Next, when we limit Chandler's claim to the evidence developed in state court, the Michigan Court of Appeals did not come close to committing "an unreasonable application" of "clearly established" Supreme Court precedent under AEDPA. 28 U.S.C. § 2254(d)(1). Indeed, we remain unconvinced that the exclusion of Chandler's main evidence (the Hamblins' testimony) even violated Michigan law.

A.

1.

To evaluate Chandler's claim that the state court prevented him from presenting a complete defense, we must first identify the evidence that Chandler says was necessary to his defense.

Before the Michigan Court of Appeals, Chandler argued that he needed to introduce two categories of evidence: (1) testimony from two of A.H.'s previous foster parents, Randy and Sue Hamblin, and (2) testimony from Chandler's proposed expert, Jeff Kieliszewski. *See Chandler*, 2017 WL 6502801, at *2. Chandler limited himself to these three witnesses only. As the Michigan Court of Appeals explained, Chandler identified "the exclusion of testimony from the Hamblins and Kieliszewski" as "the only potential prejudice" to his defense. *Id.* at *4.

And for good reason. After Chandler's conviction, the Michigan Court of Appeals remanded the case to give Chandler the opportunity to build a record about the testimony of all excluded witnesses. *Id.* at *1. The trial court allowed Chandler's witnesses to explain what they would have said at trial if they had taken the stand. *Id.* At that evidentiary hearing, though, Chandler developed a record only about the proposed testimony of the Hamblins and Kieliszewski. *Id.* So when his case returned to the Michigan Court of Appeals, Chandler couldn't argue that the exclusion of any other witnesses had prejudiced him.

What's more, the Michigan Court of Appeals clarified that its key holding on which today's panel relies—that the trial court abused its discretion by failing to consider whether Chandler's evidence of A.H.'s prior false accusations was admissible under Michigan Rule of Evidence 404(b)—applied only to "the Hamblins' testimony." *Id.* at *4. That is, the trial court erred by failing to consider whether "the Hamblins' testimony" might have been admissible under Rule 404(b). *Id.* To be sure, Chandler had asserted that the trial court should have admitted other evidence as well. *Id.* at *4 n.2. But the Michigan Court of Appeals held that Chandler had forfeited those arguments by failing to adequately develop them. So "apart from the Hamblins' testimony," it "deem[ed] the issue abandoned." *Id.* Putting it all together,

Chandler's constitutional claim in this federal proceeding must rise or fall on a theory that he needed the testimony of the Hamblins and Kieliszewski to present a complete defense.

Despite this forfeiture holding, the panel opinion repeatedly discusses evidence that is not properly before this court. It mentions that Chandler's trial counsel suggested he would have liked to call (1) two of A.H.'s prior foster families, the Nickersons and the Lamberts, (2) a woman named Amanda Fraly, and (3) five foster care employees. *Chandler*, 137 F.4th at 532–33. But Chandler didn't develop what those witnesses would have said at the evidentiary hearing designed for that purpose. That is why the Michigan appellate court properly deemed those witnesses abandoned.

The panel also describes nine allegations that A.H. allegedly made in the past. *Id.* at 533. But more than half of these purported allegations go beyond the scope of the testimony that the Hamblins offered at the evidentiary hearing. Indeed, of the nine purported allegations discussed in the panel opinion, the most serious ones are irrelevant to Chandler's federal habeas claim. Those include A.H.'s supposed allegations that (1) a cousin abused her, (2) a daycare provider hit her, (3) a prior foster parent sexually abused her, and (4) a foster care worker raped her. *Id.* These purported allegations aren't before this court, since neither the Hamblins nor Kieliszewski could or would have testified about them.

The panel decision inexplicably discusses these claimed accusations without mentioning the Michigan Court of Appeals' forfeiture holding. *See Chandler*, 2017 WL 6502801, at *4 & n.2; *see also Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998) (explaining that a claim must be "presented to the state courts under the same theory in which it is later presented in federal court"). That holding represents an independent and adequate state-law ground for rejecting Chandler's arguments that rely on the forfeited evidence. *Hand v. Houk*, 871 F.3d 390, 412 (6th Cir. 2017). And a federal court may not grant habeas relief based on evidence that a petitioner did not present to the state court. *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011).

Finally, the panel mentions an order issued by a Michigan family court judge, Judge Kathleen Feeney, and the records underlying that order. *Chandler*, 137 F.4th at 532, 549. In the

panel's telling, that order contained "factual findings" that were "useful to Chandler." *Id.* at 532. How does the panel know?  Candidly, we're not sure, because this order isn't in the record.

The panel adds that "[h]ad Chandler obtained a copy of Judge Feeney's records in time for trial, the jury would have seen a probate court's factual findings" that A.H. had made prior false accusations. *Id.* at 549.  But Chandler *did* obtain those records in time for trial.  His counsel admitted that he got the records "on the day of trial" and used them during cross-examination of the witnesses. R. 9-5, Pg. ID 348; R. 9-9, Pg. ID 435.  While the panel asserts that the jury "would have seen a probate court's factual findings," Chandler's counsel did not believe the records were admissible.  *Chandler*, 137 F.4th at 549; R. 9-9, Pg. ID 435.  That is why he never provided those records to the government and never moved to admit them at trial.

What's more, even if we wanted to make arguments for Chandler, we can't.  Why?  He has never put the records into evidence, even though he has had them for ten years.  He didn't do so at trial.  He didn't do so at the evidentiary hearing.  He didn't do so in his supplemental brief to the Michigan Court of Appeals after the evidentiary hearing.  *See generally* R. 2-5.  So it's no surprise that the Michigan Court of Appeals didn't discuss Judge Feeney's records in its opinion.  And AEDPA prohibits our reliance on the records now.  *See Pinholster*, 563 U.S. at 181–82.

In short, the panel's speculative reliance on what would have happened if Chandler had "obtained a copy of Judge Feeney's records in time for trial" conflicts with the facts and the law. *Chandler*, 137 F.4th at 549.  Chandler had the records.  He used them at trial.  R. 9-9, Pg. ID 434–35.  But we do not have them.  So we cannot use them to grant Chandler federal habeas relief.

*             *             *

All told, the panel opinion mentions reams of forfeited material that can't serve as the basis for habeas relief.  By indulging in a discussion of this forfeited material, the panel has improperly resurrected unpreserved arguments on Chandler's behalf.  *Wong*, 142 F.3d at 322; *Wagner v. Smith*, 581 F.3d 410, 418 (6th Cir. 2009).

2.

With that in mind, we summarize the evidence that is properly before this court. Chandler first wanted to introduce the testimony of A.H.'s previous foster parents, Randy and Sue Hamblin. *See Chandler*, 2017 WL 6502801, at *1. The Hamblins would have opined at trial that A.H. "was not a truthful person." *Id.* at *5. And they would have testified that A.H. made the following four false accusations against them: (1) that Randy Hamblin picked up A.H. by her ponytail and swung her in the air; (2) that Sandy Hamblin beat A.H. with a wooden spoon; (3) that the Hamblins dressed A.H. in clothes that were too small; and (4) that the Hamblins' dog attacked A.H. *Chandler*, 2017 WL 6502801, at *5 n.4. But they would have admitted that another one of A.H.'s allegations was at least partially true: that Randy Hamblin had put soap in her mouth. The Michigan authorities told the Hamblins that "this was not an appropriate punishment due to [A.H.'s] history of possible abuse." R. 9-9, Pg. ID 459 (affidavit of Randy Hamblin). And they put the Hamblins on a "'central registry' for child abuse" that barred them from being foster parents. *Id.*

Chandler next wanted to introduce Kieliszewski's expert testimony. *See Chandler*, 2017 WL 6502801, at *3. This expert would have discussed memory "confabulation" (the reliance on "fake memories") and the degradation of memories over time. *Id.* at *5. The expert also would have testified that a forensic interview of A.H. violated standard protocols because she had a support person with her (her adopted mother) and because the interview was not recorded. *See id.*

The trial court excluded these three witnesses from testifying. It excluded the Hamblins' testimony under Michigan Rule of Evidence 608(b) as improper "extrinsic evidence" designed to impeach A.H. on matters collateral to Chandler's abuse. *See id.* at *4. The court also appears to have excluded these witnesses from testifying under Michigan Court Rule 6.201(A)(1) because Chandler had failed to identify them before trial. *See also* Mich. Comp. Law § 767.94a(1)–(2). And it barred Kieliszewski's expert testimony under Michigan Court Rule 6.201(A)(1) because Chandler's lawyer had also failed to timely disclose the expert before trial.

The Michigan appellate court held that the trial court misapplied these state rules of evidence and procedure by excluding Chandler's evidence. *See Chandler*, 2017 WL 6502801, at *3–4. It suggested that defense counsel's failure to timely disclose the expert arose from the trial court's unreasonable failure to grant a continuance. *See id.* at *3. And it suggested that A.H.'s accusations against the Hamblins *might* have been admissible "other acts" evidence under Michigan Rule of Evidence 404(b), even if this testimony was inadmissible under Rule 608(b). *See id.* at *5. Yet the Court of Appeals stopped short of holding that the evidence *would* have been admissible under Rule 404(b). *See id.* ("[a]ssuming arguendo" that the evidence was admissible under Rule 404(b) or another rule). It also rejected Chandler's federal constitutional claim that the exclusion of these three witnesses violated his "right to present a defense." *Id.* at *4 n.3. The court explained that Chandler was represented by counsel at trial, and "defense counsel presented defendant's argument that the victim fabricated the allegations against defendant." *Id.*

## B.

Under AEDPA, Chandler must show that the Michigan appellate court's rejection of his constitutional claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This text requires him to first identify a legal rule rooted in the holdings of Supreme Court decisions. *See Fields v. Jordan*, 86 F.4th 218, 231–32 (6th Cir. 2023) (en banc). The text also requires him to show that the state appellate court either adopted a conflicting legal rule or applied the established rule in such an "obviously" mistaken manner "that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (per curiam) (citation omitted). Chandler cannot satisfy these standards.

We start with the requirement to identify the "clearly established" law. Undoubtedly, the Supreme Court has established that several provisions of the Constitution together give criminal defendants "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (citation omitted). Yet it has also made clear that the Constitution does not superimpose uniform rules of evidence on top of the evidentiary rules that the States themselves

choose to adopt.  *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006).  So the Court has "rarely" held that the exclusion of evidence under an evidentiary rule violates the Constitution. *Jackson*, 569 U.S. at 509.  And it has made clear that the Constitution permits a state court to exclude a defendant's evidence under "well-established rules," such as those barring irrelevant or unfairly prejudicial testimony.  *Holmes*, 547 U.S. at 326.

That said, the Court has found five unique evidence rules unconstitutional over the years. *See Jackson*, 569 U.S. at 509 (collecting cases).  Start with *Washington v. Texas*, 388 U.S. 14 (1967).  There, an isolated Texas statute prevented defendants from introducing the testimony of charged "coparticipants" in the crime unless the coparticipants had been acquitted.  *Id.* at 16 & n.4.  Under this evidence rule, a defendant on trial for murder could not call as a witness the person who had been convicted for the same murder and who would have testified that the defendant tried to stop it.  *Id.* at 16–17.  This "absurd[]" rule barred only defendants—and not the prosecution—from calling accomplices to the charged crime.  *Id.* at 22.  The Court thus held that the rule's enforcement violated the defendant's right to present a complete defense "because the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed."  *Id.* at 23.

The Court issued a similar holding in *Chambers v. Mississippi*, 410 U.S. 284 (1973).  In that case, the State had charged the defendant with murdering a policeman.  *Id.* at 286–87. Another man had previously confessed to the murder but then recanted.  *See id.* at 287–88.  At trial, the defendant sought to admit this man's prior confessions, but a "strict application of certain Mississippi rules of evidence" "thwarted" these efforts.  *Id.* at 289.  The defendant called the man as a witness but couldn't cross-examine him under a rule barring parties from cross-examining their own witnesses.  *Id.* at 291, 294.  Further, under a hearsay rule, the defendant couldn't introduce evidence from three other people to whom the man had confessed.  *Id.* at 292. The Court held that the "exclusion of this critical evidence, coupled with the State's refusal to permit Chambers to cross-examine" the man, violated Chambers's due process rights.  *Id.* at 302. But it cautioned that its holding was limited to "the facts and circumstances" of the specific case. *Id.* at 303.

The Court decided *Crane* next. There, a defendant confessed to a murder, and a state court rejected his claim that the confession had been involuntary given the coercive conditions under which he had given it. *See Crane*, 476 U.S. at 684–86. At trial, the defense sought to convince the jury that it should not believe his confession because of the coercive conditions. *Id.* at 685. But the trial court excluded the evidence of those conditions on the ground that this evidence went only to whether the confession had been voluntary and not to the question whether it was credible. *Id.* at 686–87. The Court held that this ruling violated the defendant's right to present a complete defense because the state court had not "advanced any rational justification" for the exclusion and because the evidence was relevant to whether the jury should believe the confession. *Id.* at 688–91.

In *Rock v. Arkansas*, the Court found unconstitutional a bright-line "evidentiary rule prohibiting the admission of hypnotically refreshed testimony." 483 U.S. 44, 45 (1987). There, a woman charged with killing her husband could not "remember the precise details of the shooting," so she submitted to hypnosis. *Id.* at 46. The trial court excluded all her hypnotically induced testimony. *Id.* at 47–48. The Court held that the State's *per se* rule categorically barring this type of testimony qualified as "an arbitrary restriction on the right to testify" because the State had not adequately shown the invalidity of "all posthypnosis recollections." *Id.* at 61.

Lastly, the Court in *Holmes* considered a rule that barred defendants from introducing evidence implicating a third party in the crime if the prosecution's "forensic evidence" strongly showed that the defendant had committed it. 547 U.S. at 321. The Court found this rule of evidence "arbitrary" because it did "not rationally serve" the purposes that allegedly justified it: excluding remote or speculative evidentiary matters. *Id.* at 327–28, 331.

The Court has, by contrast, upheld an evidence rule that banned the admission of polygraph evidence because this ban arguably served a valid purpose without affecting any significant interest of defendants. *See Scheffer*, 523 U.S. at 308–12, 315–17. As for the State's interest, polygraph evidence was of debatable reliability. *See id.* at 308–12. As for the defendant's interest, the ban on polygraph evidence did not prevent the defendant from introducing "'facts' about the alleged crime at hand"; it prevented the defendant from introducing only facts about his testimony's credibility. *Id.* at 316–17 & n.13.

Summarizing these cases, the Court has held that an evidence rule violates the Constitution only if it is "'arbitrary' or 'disproportionate to the purposes [it is] designed to serve'" and if it "infringe[s] upon a weighty interest of the accused." *Id.* at 308 (quoting *Rock*, 483 U.S. at 56, 58). In other words, the Constitution does not permit "arbitrary" rules that "exclude[] important defense evidence but that [do] not serve any legitimate interests." *Holmes*, 547 U.S. at 325.

C.

The Michigan appellate court's decision did not engage in an "unreasonable application" of these "clearly established" principles under AEDPA. 28 U.S.C. § 2254(d)(1).

To start, we question whether these principles can even qualify as "clearly established" law in this case. In *Washington*, *Chambers*, *Crane*, *Rock*, and *Holmes*, the Court found unconstitutional novel or antiquated rules of evidence or procedure. The rule in *Washington* barred accomplices charged with the same crime from testifying on behalf of a defendant. 388 U.S. at 16 & n.4. The rule in *Chambers* barred defendants from cross-examining their own witnesses. 410 U.S. at 295–96. The rule in *Crane* barred defendants from introducing evidence about the conditions of their confession. 476 U.S. at 686–87. The rule in *Rock* barred defendants from providing testimony recalled after hypnosis. 483 U.S. at 56. And the rule in *Holmes* barred defendants from introducing exculpatory evidence showing that another person committed the crime if the prosecution possessed strong "forensic evidence" pointing to their guilt. 547 U.S. at 321. In each case, the Court balanced the state justifications for these *evidence rules* against their effects on the accused.

This case is different. The Michigan trial court did not exclude the testimony of the Hamblins and Kieliszewski under some peculiar rule of evidence or procedure. To the contrary, it relied on "well-established rules" that Chandler does not challenge as a general matter. *Holmes*, 547 U.S. at 326. The court excluded the Hamblins' testimony based on the ubiquitous rule barring parties from impeaching a witness's credibility (here, A.H.'s credibility) with extrinsic evidence about the witness's prior conduct (here, her past allegations against the Hamblins). *Cf.* Fed. R. Evid. 608(b). In another AEDPA case involving prior (purportedly false) allegations, the Supreme Court has already held that "[t]he constitutional propriety of this

rule cannot be seriously disputed." *Jackson*, 569 U.S. at 510. Next, the trial court excluded Kielieszewski's testimony based on an equally common rule requiring parties to disclose their witnesses ahead of trial. *Cf.* Fed. R. Crim. P. 16(b)(1)(C)(ii). The Supreme Court has likewise held that none of its precedents "clearly establishes" the unconstitutionality of this type of "notice" mandate. *Jackson*, 569 U.S. at 510. It has added that its precedent also does not clearly establish any requirement for a court to engage in "a case-by-case balancing of interests before such a rule can be enforced." *Id.*

Chandler instead argues that the state trial court violated his right to put on a complete defense by *misapplying* these otherwise *valid* rules of evidence and procedure. How should we analyze this different type of claim? The parties do not cite a Supreme Court decision on that issue. *Cf. United States v. Reynolds*, 86 F.4th 332, 351 (6th Cir. 2023). Will the Court extend its ban on "arbitrary" evidentiary rules by holding that arbitrary *applications* of valid rules also violate the right to assert a complete defense? *Holmes*, 547 U.S. at 325. If so, will it extend its balancing approach (measuring the state interest against the defendant's interest) to that new frontier? How should courts measure the state interest when the underlying state rule did not justify the exclusion? How badly must a state court misapply a traditional rule for this state-law error to qualify as a constitutional violation? The answers to these questions are not obvious to us. And the lack of clarity in existing precedent all but dooms relief in this AEDPA context. If we don't even know the constitutional test that applies, how could the state court have unreasonably applied that test? That is why the Supreme Court has held that a legal rule's rationale does not qualify as clearly established if a federal "habeas court must extend [that] rationale before it can apply to the facts at hand." *White v. Woodall*, 572 U.S. 415, 426 (2014) (citation omitted).

Still, we need not rest on this conclusion. We read the Michigan Court of Appeals' rejection of Chandler's constitutional claim as engaging in the type of balancing that the Supreme Court has used when evaluating the constitutionality of evidence rules. It reasoned that the exclusion of evidence did not violate Chandler's constitutional rights because defense counsel was able to present Chandler's argument that "the victim fabricated the allegations against" him. *Chandler*, 2017 WL 6502801, at *4 n.3. In other words, the state court held that

the exclusion did not violate a "weighty" enough interest of Chandler's. *Scheffer*, 523 U.S. at 308. Because a "fairminded" judge could have balanced the relevant interests in this fashion, the state court did not unreasonably apply the Supreme Court's cases. *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

1.

Start with the state "interests" in the exclusion of the evidence. *Holmes*, 547 U.S. at 325.

a.

Fairminded jurists could conclude that the Michigan trial court's exclusion of Chandler's key evidence—the Hamblins' testimony about A.H.'s false allegations—was supportable by a valid state justification. The trial court would have been within its discretion to exclude the Hamblins' testimony, even under a proper interpretation of Michigan evidence law.

As an initial matter, the panel opinion repeatedly asserts—as though it were a given—that A.H.'s prior (and allegedly false) accusations against the Hamblins were admissible under Michigan Rule of Evidence 404(b). *Chandler*, 137 F.4th at 536 (asserting that "the jury should have heard evidence of A.C.'s prior false allegations"); *id.* at 543 (claiming that the evidence was "clearly admissible under Rule 404(b)"). In doing so, the panel overreads the Michigan Court of Appeals' decision, which didn't find Chandler's evidence admissible. *See Chandler*, 2017 WL 6502801, at *4–5. Rather, the state appellate court held only that the trial court abused its discretion by failing to *consider* whether Rule 404(b) allowed the evidence. *Id.* at *4. So it didn't decide, one way or the other, whether the evidence actually would have been admissible. *Id.* at *4–5.

And sure enough, there is reason to doubt the admissibility of Chandler's proffered evidence about A.H.'s false allegations. Recall that the Hamblins would have testified that A.H. made the following accusations against them: (1) that Randy Hamblin picked up A.H. by her hair and swung her in the air; (2) that Sandy Hamblin beat A.H. with a wooden spoon; (3) that the Hamblins dressed A.H. in clothes that were too small for her; and (4) that the Hamblins' dog

attacked A.H.  *Id.* at *5 n.4.  Fairminded jurists could deem this hearsay evidence inadmissible for two independent reasons.

*First*, a fairminded jurist could exclude the Hamblins' testimony under Rule 404(b) because the evidence didn't actually show that A.H. followed a scheme (or had a motive) to fabricate sexual abuse accusations.  A.H.'s allegations against the Hamblins had nothing to do with a sexual assault.  Allegations that the Hamblins dressed their child in the wrong kind of clothing, or had an aggressive dog, or chose to discipline their child through methods like hair-pulling and the use of a wooden spoon, don't approach the gravity of an accusation of sexual assault.  Surely a reasonable jurist could conclude that a scheme or plan to falsely accuse foster parents of aggressive parenting doesn't fairly encompass a scheme or plan to falsely accuse a parent of sexual assault.  When applying the federal version of Rule 404(b), for example, we have sometimes held that a criminal defendant's prior drug offenses were not sufficiently similar to show that the defendant engaged in the charged drug offense.  *See United States v. Haywood*, 280 F.3d 715, 721–23 (6th Cir. 2002); *see also United States v. Sadrinia*, 134 F.4th 887, 893–94 (6th Cir. 2025).

What's more, consider A.H.'s supposed motive to lie.  Chandler argued that A.H. had a motive to falsely accuse him of sexual assault because she wanted to leave his custody and return to her birth parents.  *Chandler*, 137 F.4th at 541.  But the panel refuses to acknowledge a fact that casts serious doubt on that theory:  by the time of Chandler's trial, A.H. had been living with a new foster family for *five years* but hadn't made any accusations of wrongdoing against them even after they adopted her.  Chandler's counsel acknowledged as much when he conceded that, "in the last five years," A.H. had been living in a new foster home and was "doing fine."  R. 9-5, Pg. ID 347.  And that family actually adopted A.H.  Did A.H. make accusations against them to stop them from adopting her?  No.  If A.H. originally had a motive to falsely accuse her foster parents of crimes so that she could go back to her birth parents, that motive had evaporated by the time she testified about Chandler's sexual abuse at trial.

The panel doesn't mention that A.H. had been living with a new family for almost five years without incident.  Instead, the panel omitted that fact.  At Chandler's trial, the prosecutor asserted the following:  "Where is [A.H.]?  She's in a home that doesn't include her birth parents

for five years. Is there any evidence that there's been any problems with her false allegations? Nonsense." R. 9-6, Pg. ID 399. The amended panel opinion reproduces a block-quote of this part of the prosecutor's closing argument but uses an ellipsis to cut out this statement. *Compare* R. 9-6, Pg. ID 399 *with Chandler*, 137 F.4th at 541. Thus, the opinion glides over this critical fact that casts doubt on A.H.'s supposed motive to lie. What's more, the amended opinion's use of an ellipsis distorts the meaning of the prosecutor's statement. With the ellipsis inserted, the opinion uses this quote to support its argument that there wasn't any evidence of A.H.'s false allegations *introduced at trial*. Yet the prosecutor was saying that there wasn't any evidence that A.H. had made false allegations *during the five years that she had been living in a new adoptive home*.

In sum, Chandler's evidence doesn't show that A.H. followed a scheme of alleging sexual abuse or that she had a motive to falsely accuse him of that abuse at trial. In interpreting analogous federal rules, this court has held that a trial court may exclude "other acts" evidence that has only a remote bearing on a witness's motive to lie. *See United States v. Phillips*, 888 F.2d 38, 41–42 (6th Cir. 1989). It wouldn't have been constitutionally unreasonable for the Michigan trial court to exclude the Hamblins' testimony under the same Rule 404(b) analysis that we have adopted.

*Second*, the trial court could have rejected the evidence's admissibility under Rule 404(b) on the ground that Chandler hadn't shown that A.H.'s prior accusations against the Hamblins were false. Although A.H. testified that it was "possible" that the Hamblins' dog hadn't actually attacked her, she testified that her other allegations against the Hamblins were true. R. 9-4, Pg. ID 321. And notably, even the Hamblins agree that one of A.H.'s accusations against them was true: A.H.'s accusation that Randy Hamblin punished her by putting soap in her mouth. In fact, the Hamblins admitted that after state authorities launched an investigation into their parenting, the authorities placed the Hamblins on a central registry for child abuse and barred the Hamblins from ever adopting a child again. If the trial court had found that Chandler failed to present enough evidence that A.H.'s accusations against the Hamblins were false, then those accusations couldn't have shown that A.H. had a scheme or motive to fabricate a sexual abuse accusation against Chandler—making them inadmissible under Rule 404(b).

Indeed, one of our sister circuits has denied habeas relief on precisely this ground.  *See Cookson v. Schwartz*, 556 F.3d 647, 654–55 (7th Cir. 2009).  In *Cookson*, the defendant filed a federal habeas petition after an Illinois court convicted him of child sexual abuse.  *Id.* at 648.  Cookson claimed that the trial court violated his Confrontation Clause rights by preventing him from questioning the victim about another (allegedly false) accusation that the victim had made against her biological father.  *Id.* at 648–49, 652.  Just like Chandler, Cookson argued that evidence of the victim's prior false accusation was essential to his defense because it showed that the victim had a plan to falsely accuse the adults in her life to get what she wanted.  *Id.* at 653.

The Seventh Circuit denied habeas relief.  *Id.* at 655.  The court explained that the state trial court didn't act contrary to clearly established federal law by preventing Cookson from introducing evidence about the prior accusation, since Cookson hadn't shown that the victim's prior accusation against her biological father was false.  *Id.* at 654.  *Cookson* held as much even though a state child services agency had concluded that the victim's prior accusation was "unfounded."  *Id.* at 655.  The state agency's conclusion that the prior accusation was "unfounded" simply meant that there wasn't enough evidence to corroborate the truth of the accusation.  *Id.*  The "unfounded" determination didn't demonstrate, by itself, that the accusation was *false*.  *Id.*

*Cookson*'s persuasive logic applies to this case.  Like the defendant in *Cookson*, Chandler hasn't shown that A.H.'s accusations against the Hamblins were false.  To be sure, the Hamblins claimed that state investigators had dismissed, for lack of evidence, A.H.'s accusations about the clothes, dog attack, and wooden spoon.  But, as *Cookson* explains, a state agency's dismissal for lack of evidence doesn't show that an accusation is false.  Regarding the clothes, wooden spoon, and hair-pulling allegations, the only evidence is the Hamblins' own denial.  But, as *Cookson* explained, the trial court would have acted within its discretion to conclude that "a self-serving denial by the accused should be accorded little weight."  *Id.*  What's more, the trial court could reasonably have doubted the Hamblins' credibility.  Why?  Because the Hamblins might have been motivated by a desire to get revenge on A.H. for revealing the soap punishment that caused state authorities to place the Hamblins on a child abuse registry.  At the least, the court could have reasonably found that the probative value of this evidence did not outweigh its prejudicial

nature because it might have "confuse[d] the jury" and "unduly prolong[ed] the trial" by shifting the trial's focus to the veracity of A.H.'s claims against the Hamblins rather than the veracity of her claims against Chandler. *Jackson*, 569 U.S. at 511.

(One final point: the Michigan Court of Appeals correctly found that Chandler didn't suffer prejudice from the exclusion of the Hamblins' testimony. Imagine if one of the Hamblins had testified. Cross would have looked something like this: Q: In fact, A.H.'s allegation about you putting soap in her mouth was true? A: Yes. Q: And while you contest the remainder of her abuse allegations, CPS did investigate you for child abuse? A: Yes. Q: As a result of that investigation, the authorities placed you on a central registry for child abuse and barred you from adopting a child again? A: Yes.)

Ultimately, the panel should have followed the Seventh Circuit and held that the Michigan trial court's exclusion of the Hamblins' testimony was reasonable under valid state rules of evidence. That fact would, in turn, have shown that the exclusion furthered Michigan's "legitimate interests" in these state rules. *Holmes*, 547 U.S. at 325; *see Scheffer*, 523 U.S. at 309–10.

b.

Likewise, fairminded jurists could conclude that Michigan had a valid interest in excluding the testimony of Chandler's expert, Jeff Kieliszewski. Michigan law required Chandler to identify Kieliszewski as an expert within 28 days of trial. Mich. Ct. R. 6.201(A)(1). It's undisputed that Chandler failed to comply with that requirement. *See Chandler*, 2017 WL 6502801, at *3.

The court appointed Chandler's counsel on April 10, 2015. He didn't request any type of expert for two months. Then, three days after the expert disclosure deadline, he requested the funds to hire an expert. The court immediately approved his request. Even then, Chandler failed to disclose the expert "until the day of trial." *Chandler*, 137 F.4th at 532 n.5.

The trial court excluded Chandler's expert witness because of the disclosure violation. Of course, disclosure deadlines are constitutionally valid. *Jackson*, 569 U.S. at 510. Indeed,

enforcing disclosure deadlines is routine practice, not something out of the ordinary. As the Court has put it, an adversary trial is not like a "poker game" where players can "conceal their cards until played." *Williams v. Florida*, 399 U.S. 78, 82 (1970). Pretrial disclosure requirements prevent "surprise[s]" at trial and "enhance[] the fairness of the adversary system." *Michigan v. Lucas*, 500 U.S. 145, 150–51 (1991) (citation omitted). Or, as the trial court pointed out in this case, "[i]f you comply with the court rules, . . . your expert may testify, but you haven't even complied. . . . I've ruled the same with the prosecutor." R. 9-3, Pg. ID 258.

To be sure, the Michigan Court of Appeals held that, as a matter of state law, excluding Chandler's expert witness from testifying was too harsh of a sanction for Chandler's disclosure violation. *Chandler*, 2017 WL 6502801, at *3. But that fact is irrelevant to the federal constitutional analysis. Even if excluding Chandler's expert witness pursuant to a valid notice requirement violated *state law*, this violation does not eliminate the state interest that the notice-based exclusion served as a matter of *federal constitutional law*. *Jackson*, 569 U.S. at 510.

Finally, consider the troubling implications of the panel's contrary holding. Imagine if the Michigan Court of Appeals had simply upheld the trial court's exclusion on timeliness grounds. We wouldn't be here today. After all, the Supreme Court has already held that no caselaw prevents states from enforcing state-law notice requirements. *Id*. at 509. But instead of demanding strict compliance with Michigan's witness-disclosure rules (and thereby insulating itself from federal habeas review), the Michigan Court of Appeals decided to give Chandler a break by excusing his noncompliance. And how does the panel respond? By seizing on that leniency as the basis for its grant of habeas relief. In the panel's view, by giving Chandler *more* protection under state law than the Supreme Court's caselaw currently requires, the Michigan courts have exposed themselves to a federal constitutional violation. That is an astonishing inversion of AEDPA's demand for deference.

2.

Turn to Chandler's "interest" in admitting the testimony of the Hamblins and Kieliszewski. *Scheffer*, 523 U.S. at 309. For two reasons, the Michigan appellate court could reasonably conclude that this testimony did not qualify as evidence "central to the defendant's claim of innocence." *Crane*, 476 U.S. at 690.

*First*, this case is not like *Washington*, *Chambers*, *Rock*, and *Holmes* because the excluded testimony in those cases concerned "factual evidence" about the *charged* crimes. *Scheffer*, 523 U.S. at 317. Take *Holmes*. There, the state court did not allow the defendant to introduce evidence that another man had committed the murder. 547 U.S. at 323. Or take *Washington*. There, the state court did not allow the defendant to introduce testimony that he had tried to stop the murder. 388 U.S. at 16–17. Chandler wasn't deprived of the opportunity to introduce similar evidence—namely, evidence about the charged sexual abuse. A.H. testified and was cross-examined about Chandler's alleged abuse. The court thus didn't prevent a witness who had "personally observed" the facts from testifying. *See id.* at 23. The court also didn't prohibit Chandler from testifying himself or from admitting a confession from A.H. that she fabricated the allegations. *See Chambers*, 410 U.S. at 302.

The Michigan appellate court could instead reasonably find that Chandler's proposed testimony was like the defense evidence in *Scheffer*. There, the Court held that a defendant's polygraph evidence did not "implicate any significant interest of the accused" because it did not concern *factual evidence* about the charged offense. 523 U.S. at 316–17 & n.13. Rather, the defense sought to use the polygraph evidence merely to "bolster [the defendant's] own credibility." *Id.* at 317. The state court could reasonably believe that *Scheffer*'s logic applies here. None of the excluded witnesses would've testified "*about* the alleged crime at hand": Chandler's alleged abuse of A.H. *Id.* at 317 n.13 (emphasis added). Rather, Chandler wanted them to testify about prior allegations made by A.H. He sought to show that, by lying to avoid adoption in the past, A.H. had a "motive," "plan," or "scheme" to "manipulat[e] the foster care system." R. 9-3, Pg. ID 257. But these witnesses would have been admitted as evidence of an "*other* crime, wrong, or act." Mich. R. Evid. 404(b)(1) (emphasis added). By falling within Rule 404, the evidence concerned other events, not the abuse at issue. Likewise, Chandler's

expert would have testified about the scientific processes of childhood memory development, not what Chandler did or didn't do. So just as the defendant in *Scheffer* sought to use a polygraph expert to bolster his credibility, Chandler sought to use his expert to undermine A.H.'s credibility.

Nor could Chandler rely on *Crane* in this AEDPA context. Admittedly, *Crane* did not concern evidence about the crime itself; rather, it concerned evidence about the conditions under which the defendant had confessed to that crime. The defendant sought to introduce this evidence to undermine the "credibility" of that confession. 476 U.S. at 685–87. So that fact might put *Crane* in some tension with *Scheffer*. Still, the state court would not have acted unreasonably by concluding that Chandler's case was closer to *Scheffer* than *Crane*. The state courts in *Crane* had not offered "any rational justification" for the exclusion. *Id.* at 690–91. Here, by contrast, the trial court relied on rational (if mistaken) state-law grounds tied to unchallenged state-law rules.

*Second*, the Michigan Court of Appeals could have reasonably concluded that the "repetitive" nature of Chandler's evidence showed that it was not "central" to his defense. *Id.* at 689–90 (citation omitted). Chandler must show that he had a "weighty" interest in the evidence's admission. *Holmes*, 547 U.S. at 324 (citation omitted); *see Reynolds*, 86 F.4th at 351. Even outside AEDPA, defendants in our court cannot meet this requirement unless they show that the omitted evidence "would have created a reasonable doubt" about their guilt that did not already exist. *Reynolds*, 86 F.4th at 351 (citation modified). State courts thus retain "wide latitude" to exclude mere "repetitive" or "marginally relevant" evidence without implicating the constitutional right to present a complete defense. *Crane*, 476 U.S. at 689 (citation omitted). The state appellate court could have reasonably found that Chandler's evidence fit this bill.

Start with Kieliszewski's testimony. This expert would have discussed "confabulation" (when a child "fill[s] in the blanks" with fake memories) and memory degradation over time. R. 9-9, Pg. ID 441–43. And he would have talked about "best practice[s]" for forensic interviews to support Chandler's argument that the caseworker violated those practices by failing to videotape A.H.'s interview and allowing her adoptive mother to sit in on it. *Id.* But these points came out during trial. The prosecution's expert acknowledged that memories degrade

over time and that sometimes children come to believe lies as actual memories. The CPS investigator who conducts forensic interviews testified about best practices and conceded on cross that she does not recommend having support persons present during interviews. And the case detective acknowledged that A.H.'s adoptive mother was present during A.H.'s forensic interview despite these best practices.

Next, recall that the Hamblins would have testified generally about A.H.'s untruthfulness and the accusations she made against them. But again, Chandler cross-examined A.H. about these statements. She admitted it was "possible" that she lied about the Hamblins' dog attacking her. R. 9-4, Pg. ID 321. And although she said it was true that the Hamblins put soap in her mouth, she confirmed that it happened "right after" they told her that they wanted to adopt her. *Id.* A.H.'s caseworker also testified that she "was aware that [A.H.] had made prior allegations of physical abuse, not of sexual abuse." *Id.* at Pg. ID 333. Finally, Chandler's wife testified that social workers told her to "watch" A.H because "she had made allegations" about former foster parents. R. 9-5, Pg. ID 382. And she testified that A.H. told her about Chandler's misconduct a few days after they told her about their plans to adopt her.

In sum, the Michigan appellate court's decision was not "so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn*, 592 U.S. at 118 (citation omitted). AEDPA thus precludes relief.

## D.

The panel's contrary holding violated a host of AEDPA rules. *First*, the Supreme Court has told us that, when applying a "general" rule, state courts enjoy "more leeway . . . in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004). That is because reasonable jurists are more likely to disagree over how to apply principles stated at a high level of generality. That concern is especially true where, as here, one of the cornerstone precedents limited its holding to "the facts and circumstances of [that] case." *Chambers*, 410 U.S. at 303. Thus, even if the line of cases starting with *Washington* and *Chambers* established a general right to present a complete defense, fairminded jurists could

disagree over how that right applies in the many factual contexts in which it might arise. This is one of those contexts in which fairminded jurists could do so.

*Second*, the panel relied on legal principles that were not "clearly established" by "Supreme Court" precedent. 28 U.S.C. § 2254(d)(1). For example, it simply concluded—by *ipse dixit*—that the Court's balancing test for determining the constitutionality of a "state rule" of evidence also applies to determine the constitutionality of the exclusion of evidence under an otherwise "valid" rule that a court "misapplied" on the facts of a case. *Chandler*, 137 F.4th at 540. The panel's only support for this significant jump was a "*Cf.*" citation to *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). *See id.* But *Lewis* addressed a capital defendant's Eighth Amendment challenge to an aggravating circumstance. *See* 497 U.S. at 780. That far-afield case clearly establishes the legal principles that should govern the exclusion of evidence here? AEDPA is not supposed to work this way.

Similarly, the panel asserted that the reasons underlying the valid state rules at issue in this case could not constitutionally "justif[y]" the state trial court's exclusion of evidence under those rules because of the state appellate court's conclusion that the trial court had violated the state rules. *Chandler*, 137 F.4th at 542–43. Here again, no clearly established Supreme Court precedent supports this rule. Indeed, if the Constitution barred any reliance on state evidentiary rules when a court erroneously excludes evidence under those rules, does that mean that *all* evidentiary errors violate the Constitution? No Supreme Court precedent would compel that conclusion. If anything, the Court's precedent cuts the other way. The Court has repeatedly held that violations of state law do not automatically establish constitutional violations. *See Estelle v. McGuire*, 502 U.S. 62, 67–68, 71–72 (1991); *see also Gilmore v. Taylor*, 508 U.S. 333, 344 (1993). At the least, it is debatable whether the reasons supporting a state evidentiary rule can help justify a state court's mistaken reliance on that rule in defense of a federal constitutional challenge.

*Third*, and finally, the panel relied on one of our *own* precedents to show that the Michigan appellate court violated clearly established law. *See Chandler*, 137 F.4th at 539 (citing *Forensic v. Birkett*, 501 F.3d 469 (6th Cir. 2007)). It's true that *Forensic* applied AEDPA and thus amounts to precedent on what law has been "clearly established" by the Supreme Court.

*See Marshall v. Rodgers*, 569 U.S. 58, 64 (2013) (per curiam); *see Ferensic*, 501 F.3d at 472. Still, we issued that decision in 2007—years before the Court's recent decisions clarifying AEDPA's demanding nature. *See, e.g.*, *Brown v. Davenport*, 596 U.S. 118, 135–37 (2022); *Shinn*, 592 U.S. at 118–24. Consider, for example, that the state court in *Ferensic* had excluded an expert because the defendant violated a state-law rule requiring disclosure of the expert's report ahead of trial. *See* 501 F.3d at 471. We held that the exclusion of this expert violated clearly established law requiring a "proportionality-based" review. *Id.* at 476. But the Supreme Court has held that none of its cases mandate the "case-by-case balancing" that *Ferensic* demanded. *Jackson*, 569 U.S. at 510. "Perhaps the logical next step from" the Supreme Court's existing precedent will be to extend this type of balancing to misapplications of lawful state rules, "but 'perhaps not.'" *Virginia v. LeBlanc*, 582 U.S. 91, 95 (2017) (per curiam) (citation omitted). And this debate "cannot be resolved on federal habeas review." *Id.* To the extent *Ferensic* found clearly established law when there was none, then, that is even more reason why we should've taken this case en banc. *Cf. Fields*, 86 F.4th at 238–39.

III.

This case warranted en banc review. The panel ignored AEDPA's strictures and granted habeas relief absent clearly established Supreme Court law. *See* Fed. R. App. P. 40(b)(2)(B).

And this case presents questions of "exceptional importance." Fed. R. App. P. 40(b)(2)(D). Federal review of state convictions intrudes on state sovereignty, denies a state's right to punish convicted criminals, and frustrates a state's interest in repose. *See Harrington*, 562 U.S. at 103. It also imposes "profound societal costs." *Calderon v. Thompson*, 523 U.S. 538, 554 (1998) (citation omitted). Indeed, a retrial in this case would likely require four witnesses, including A.H. and two of Chandler's relatives, to testify a second time about Chandler's sexual abuse. *See Shoop v. Cunningham*, 143 S. Ct. 37, 44 (2022) (Thomas, J., dissenting from denial of certiorari) (admonishing as "an injustice" our court's "profound disrespect, not merely to the State, but to citizens who perform the difficult duty of serving on . . . juries" and "to the surviving victims of [the defendant's] atrocious crimes"). Therefore, AEDPA demands that we review state-court convictions only for "extreme malfunctions" in the

state justice system.  *Harrington*, 562 U.S. at 102 (citation omitted).  The panel disobeyed that command.

We respectfully dissent from the denial of rehearing en banc.

ENTERED BY ORDER OF THE COURT

_____

Kelly L. Stephens, Clerk